699 So.2d 1332 (1997)
Leonardo FRANQUI, Appellant,
v.
STATE of Florida, Appellee.
No. 84701.
Supreme Court of Florida.
July 3, 1997.
Rehearing Denied October 7, 1997.
*1333 Eric M. Cohen, Miami, for Appellant.
Robert A. Butterworth, Attorney General and Randall Sutton, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Leonardo Franqui. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Franqui's convictions. However, because we find a violation of appellant's Sixth Amendment constitutional right to confront his accusers, we reverse his death sentence and remand for a new sentencing proceeding before a jury.

FACTS
The defendant, Leonardo Franqui, along with codefendants Pablo San Martin, Ricardo Gonzalez, Fernando Fernandez, and Pablo Abreu were charged with first-degree murder of a law enforcement officer, armed robbery with a firearm, aggravated assault, unlawful possession of a firearm while engaged in a criminal offense, grand theft third degree, and burglary.[1] Franqui, Gonzalez, and San Martin were tried together before a jury in May, 1994.
The record reflects that the Kislak National Bank in North Miami, Florida, was robbed by four gunmen on January 3, 1992. The perpetrators made their getaway in two stolen grey Chevrolet Caprice cars after taking a cash box from one of the drive-in tellers. During the robbery, Police Officer Steven Bauer was shot and killed. Shortly after the robbery, the vehicles were found abandoned two blocks west of the bank.
Approximately two weeks later, codefendant Gonzalez was stopped by police after leaving his residence on January 18, 1992. He subsequently made unrecorded and recorded confessions in which he told police that Franqui had planned the robbery, involved the other participants and himself in the scheme, and chosen the location and date for the crime. He said that Franqui had procured the two stolen Chevys, driven one of the cars, and supplied him with the gun he used during the robbery. He further stated that Franqui was the first shooter and shot at the victim three or four times, while he had shot only once. Gonzalez indicated that he shot low and believed he had only wounded the victim in the leg. Gonzalez consented to a search of his apartment which revealed $1200 of the stolen money in his bedroom closet. He was subsequently reinterviewed by police and, among other things, described how Franqui had shouted at the victim not to move before shooting him.[2]
Franqui was also questioned by police on January 18, 1992, in a series of unrecorded and recorded sessions. During his preinterview, Franqui initially denied any involvement in the Kislak Bank robbery, but when confronted with the fact that his accomplices were in custody and had implicated him, he ultimately confessed. Franqui stated that Fernandez had hatched the idea for the robbery after talking to a black male, and he had accompanied the two men to the bank a week before the robbery actually took place. He maintained that the black male friend of Fernandez had suggested the use of the two stolen cars but denied any involvement in the thefts of the vehicles. According to Franqui, San Martin, Fernandez and Abreu had stolen the vehicles. Franqui did admit to police that he and Gonzalez were armed during the episode, but stated that it was Gonzalezand not himselfwho yelled at the victim to "freeze" when they saw him pulling out his gun. Franqui denied firing the first shot and maintained that he fired only one shot later.
At trial, over the objection of Franqui, the confessions of condefendants San Martin and Gonzalez were introduced without deletion of their references to Franqui, upon the trial *1334 court's finding that their confessions "interlocked" with Franqui's own confession. In addition, an eyewitness identified Franqui as the driver of one of the Chevrolets leaving the bank after the robbery, and his fingerprints were found on the outside of one of the vehicles. Ballistics evidence demonstrated that codefendant Ricardo Gonzalez had fired the fatal shot from his .38 revolver, hitting the victim in the neck, and that Franqui had shot the victim in the leg with his .9 mm handgun.
Franqui was convicted on all counts, and after a penalty phase trial the jury recommended death by a vote of nine to three. The trial court followed the jury's recommendation and sentenced Franqui to death. Franqui presents the following claims on appeal: (1) that the trial court erred in denying Franqui's peremptory challenges of jurors Diaz and Andani; (2) that the trial court abused its discretion in granting the State's peremptory challenge of juror Pascual because the State's reasons for striking this juror were not gender neutral; (3) that the trial court erred in denying Franqui's motion for severance based upon the introduction of nontestifying codefendant Gonzalez's confession at their joint trial; (4) that the trial court erred in admitting the prosecutor's comments to the jury concerning the victim's personality and character; and (5) that the trial court erred in sentencing Franqui to death.
We find claim 2 to be procedurally barred under Joiner v. State, 618 So.2d 174 (Fla.1993), because defense counsel failed to properly renew his objection to juror Pascual before accepting the jury and allowing it be sworn.[3]See Joiner, 618 So.2d at 176 n. 2 (requiring strict construction of rules of preservation because otherwise, the defense "could proceed to trial before a jury he unqualifiedly accepted, knowing that in the event of an unfavorable verdict, he would hold a trump card entitling him to a new trial"). Similarly, we find claim 4, dealing with the prosecutor's allegedly improper comments appealing to jurors' sympathy also to be procedurally barred because it was not properly preserved for review.[4] We also decline to address the merits of claim 5 because these sentencing issues are rendered moot by our decision here to remand for a new penalty phase trial. We address the remaining claims below.

JURY SELECTION
Franqui first contends that the trial court erred in denying his exercise of a peremptory challenge to excuse prospective juror Diaz from the jury. The initial colloquy on the issue was as follows:
MS. BRILL: Wait a minute, Judge, are they striking Aurelio Diaz? State would challenge that strike.
THE COURT: On Aurelio Diaz, let me hear your reasons. Mr. Diaz [the defense counsel], your grounds?
MR. DIAZ: I don't like him.
THE COURT: Okay, that, in that case I will have to disallow that being the reason, I will have to disallow your strike. As it is not a race neutral reason.
We have consistently held that trial courts have broad discretion in determining the propriety *1335 of the exercise of peremptory challenges. Curtis v. State, 685 So.2d 1234 (Fla. 1996); Files v. State, 613 So.2d 1301 (Fla. 1992). We conclude that the trial court did not abuse its discretion in striking Franqui's peremptory challenge.
We cannot agree with the dissenting opinion that the State's objection was insufficient to permit the trial court to make inquiry with respect to whether juror Diaz was being challenged for nonracial reasons. In support of their position, the dissenters rely on Windom v. State, 656 So.2d 432 (Fla.), cert. denied, ___U.S.___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995), and Melbourne v. State, 679 So.2d 759 (Fla.1996), both of which stated that a party objecting to the other side's use of a peremptory challenge on racial grounds must show that the person being challenged is a member of a distinct racial group.
Our holding in Windom was that there was not a sufficient objection to reverse the trial court for not requiring the challenging party to provide race-neutral reasons for the challenge. Thus, the rationale of Windom would be pertinent if the trial court in the instant case had declined to inquire into the racial basis for the challenge. Here, however, the trial court clearly understood that the objection to the challenge of a venireperson in Dade County, who was born and raised in Havana, Cuba, and whose name was Aurelio Diaz, was being made on racial grounds. This is especially true because there was never any contention made to the trial court that prospective juror Diaz was not a member of a cognizable minority or that there should not be a Neil[5] inquiry. Moreover, we have encouraged trial judges to err on the side of holding a Neil inquiry. State v. Slappy, 522 So.2d 18 (Fla.1988). See Curtis (upholding denial of peremptory challenge in face of contention that objecting party had failed to make a prima facie showing of discrimination). The facts of Melbourne are equally inapposite. In that case, the objection to the challenge was clearly made on racial grounds, but the objecting party failed to preserve the issue for review because the objection was not renewed before the jury was sworn.
Standing alone, defense counsel's statement, "I don't like him," may appear to be a race-neutral reason. However, the trial court was obligated to evaluate the credibility of this statement in the full context in which this statement was made. The present record reveals that juror Diaz was questioned extensively by the court, the State, and defense counsel. The questioning takes place over nearly a half-dozen pages of transcript and yields no obvious reason for disqualification. When defense counsel, as an afterthought, later made an attempt to justify the challenge with other reasons, it was the trial court's responsibility to evaluate these reasons to determine whether they were credible. As we explained in Melbourne, "the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous." 679 So.2d at 764-65. This trial court's determination to strike the challenge of prospective juror Diaz was not clearly erroneous.[6]

ADMISSION OF CODEFENDANT'S STATEMENTS AGAINST FRANQUI
Franqui also asserts that the trial court erred by permitting the confession of his codefendant Ricardo Gonzalez to be admitted against him in their joint trial and by denying his motion to sever his trial from that of his codefendant. In Franqui v. State, 699 So.2d 1312 (Fla.1997), we discussed in detail the law applicable to the admissibility of a codefendant's confession. In this case, there is no question that Gonzalez's confession interlocked with Franqui's confession in many respects and was substantially incriminating to Franqui. Moreover, we cannot say that the totality of the circumstances under which Gonzalez made his confession demonstrated the particularized guarantee of trustworthiness sufficient to overcome the presumption *1336 of unreliability that attaches to accomplices' hearsay confessions which implicate the defendant.
Thus, the admission of Gonzalez's confession was error. However, with respect to guilt, we conclude that the error was harmless beyond a reasonable doubt. Not only did Franqui confess to participating in the robbery, he also admitted shooting the victim. He does not contest the legality of his confession in this appeal. In addition, a bullet recovered from the victim came from Franqui's gun, and an eyewitness identified Franqui as the driver of one of the stolen cars leaving the scene of the crime. Finally, Franqui's fingerprints were also found on one of the stolen vehicles used to commit the crime. Thus, we conclude that there is no reasonable possibility that the erroneous admission of Gonzalez's confession contributed to Franqui's conviction for felony murder.

PENALTY
We agree, however, that Franqui's sentence must be reversed. In Gonzalez's confession he went into great detail in characterizing Franqui as the leader of the robbery plan, and this confession easily could have prejudiced Franqui in the penalty phase deliberations. Accordingly, we affirm Franqui's convictions but remand for a new penalty phase proceeding consistent with this opinion.
It is so ordered.
OVERTON, SHAW, GRIMES and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., concurs.
HARDING, J., dissents with an opinion, in which KOGAN, C.J., and ANSTEAD, J., concur.
ANSTEAD, Judge, concurring in part and dissenting in part.
I agree with Justice Harding that this case should be reversed because of the clear error in the trial court's ruling on appellant's peremptory challenge of juror Diaz. As noted by Justice Harding, the majority opinion creates a serious perception of an unjust double standard being applied to death-sentenced defendants when this case is compared to Windom v. State, 656 So.2d 432, 437 (Fla.), cert. denied, ___U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995).
I agree with the majority, however, that the trial court erred by permitting the confession of the codefendant, Ricardo Gonzalez, to be admitted against Franqui at their joint trial and by denying Franqui's motion to sever his trial from that of his codefendant. Of course, both of these serious errors require that a new trial be ordered.

PEREMPTORY CHALLENGE
Initially, I note that the majority's reasoning is seriously flawed on the peremptory challenge issue since it is erroneously predicated upon the assumption that the trial court focused on the credibility of defense counsel's proffered reasons for the challenge. The record, however, demonstrates the opposite: the trial court mechanically applied an "I don't think that is a race-neutral reason" test. The majority has simply turned a blind eye to the obvious error in this case. As Chief Judge Schwartz declared in reversing a murder conviction under identical circumstances in Betancourt v. State, 650 So.2d 1021 (Fla. 3d DCA 1995):
Our holding that overruling the attempted strike of Garcia was reversible error is essentially based upon the fact that there is no basis whatever for concluding that the challenge involved the evil proscribed by the Batson-Neil rule; that is, that it was based on a "constitutionally impermissible prejudice," State v. Slappy, 522 So.2d 18, 20 (Fla.1988), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), or racially motivated in any way. In this case, the Hispanic defendant challenged a Hispanic prospective juror. On the face of itand there is nothing in the record to suggest otherwisethere would seem no basis for even implying a racial reason for Betancourt's not wanting Garcia to serve on his jury. See Portu v. State, 651 So.2d 791 (Fla. 3d DCA 1995). In this respect, the case is decisively unlike the *1337 overwhelming majority of casesif not every casein which a peremptory challenge has been disallowed under Batson and Neil. Typicallyif not invariablythey involve situations in which the prospective juror belongs to a group whose general characteristics would seem to be adverse to the position of the challenger. E.g., J.E.B. v. Alabama ex. rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)(defendant's challenge to female juror in paternity action); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (prosecutions's challenge to black juror in case with black defendant); Slappy, 522 So.2d at 18 (same); State v. Neil, 457 So.2d 481 (Fla.1984) (same); Abshire v. State, 642 So.2d 542 (Fla.1994)(state's challenge to exclude women with male defendant); State v. Alen, 616 So.2d 452 (Fla.1993) (prosecution's challenge to Hispanic juror in case with Hispanic defendant); Joseph v. State, 636 So.2d 777 (Fla. 3d DCA 1994) (state's challenge of Jewish venireperson in case with Jewish defendant). When, as here, there is no reason in common sense, legal intuition or the record to overcome "the presumption that peremptories will be exercised in a non-discriminatory manner," Neil, 457 So.2d at 486; State v. Johans, 613 So.2d 1319 (Fla.1993), or to justify a finding of "discriminatory intent," which is the critical, indeed the only, issue in question, see Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991), no strike may be countermanded. See Johans, 613 So.2d at 1321 (Neil inquiry required when objection raised that peremptory challenge is being used" in a racially discriminatory manner"); Portu, 651 So.2d at 791.
650 So.2d at 1023 (footnotes omitted). In addition to the striking similarity of the circumstances in Betancourt, the Third District opinion also noted the same inadequacy of the State's objection in Betancourt as exists here:
The request for a "race-neutral" explanation was both made and, without objection acceded to, entirely on the basis that the challenge was to a juror who happened to be Hispanic. The parties and the court thus proceeded upon a mutual misunderstanding of State v. Johans, 613 So.2d 1319 (Fla.1993), which governed this trial because it occurred after it was decided. Johans provides that a Neil inquiry is required only when "an objection is raised that a peremptory challenge is being used in a racially discriminatory manner." 613 So.2d at 1321. There was no such objection below and the record shows that none could have been raised in good faith.

650 So.2d at 1022 n. 2 (emphasis added). Chief Judge Schwartz' analysis is clearly applicable here. Even if the State had noted juror Diaz's ethnicity or race for the recordand I agree with Justice Harding that the State did notthere was absolutely no reason for the trial court to require Franqui, a Cuban, male defendant, to provide a raceneutral justification for striking prospective juror Diaz, presumably a Cuban male resident of Dade County. If there is ever a case where the presumption that preemptory strikes are exercised in a non-discriminatory manner holds true, it is this one.

FLORIDA EVIDENCE CODE
Although the majority discusses the constitutional problem with admitting the codefendant's out-of-court hearsay statement, the majority fails to note that the statement was not admissible under the Florida Evidence Code. The statement was hearsay and fails to qualify under any hearsay exception.
When a codefendant's confession is obtained in a custodial setting, as was the case here, the only hearsay exception that has potential applicability is the "statement against interest" exception.[7]See *1338 § 90.804(2)(c), Fla. Stat. (1995). Section 90.804(2)(c) states:

Statement Against Interest. A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject the declarant to liability or to render invalid a claim by the defendant against another, so that a person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.
Of course, for a statement to be admissible as a statement against interest, a trial judge also must find that: (1) the declarant is unavailable as a witness, see § 90.804(1), Fla. Stat. (1995); (2) "a person in the declarant's position would not have made the statement unless he [or she] believed it to be true," Peninsular Fire Ins. Co. v. Wells, 438 So.2d 46 (Fla. 1st DCA), review dismissed, 443 So.2d 980 (Fla.1983); (3) the statement is not only against the declarant's interest when made, but the declarant is also aware of that fact, Dinter v. Brewer, 420 So.2d 932, 935 n. 4 (Fla. 3d DCA 1982); and (4) corroborating circumstances clearly indicate the trustworthiness of the statement, Maugeri v. State, 460 So.2d 975, 977 (Fla. 3d DCA 1984), cause dismissed, 469 So.2d 749 (Fla.1985). See United States v. Riley, 657 F.2d 1377 (8th Cir.1981), cert. denied, 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983).
The Federal Evidence Code also has a "statement against interest" exception. In Williamson v. United States, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the United States Supreme Court narrowly construed the federal "statement against interest" exception[8] so that only those declarations or remarks within a confession that "are individually self-inculpatory" are included within the exception as statements against penal interest.[9] "The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." Id. at 599, 114 S.Ct. at 2434. The Court found that this was "especially true when the statement implicates someone else." Id. at 601, 114 S.Ct. at 2435-36. In explaining its rationale, the Court, through Justice O'Connor, stated:
To decide whether Harris' confession is made admissible by Rule 804(b)(3), we must first determine what the Rule means by "statement," which Federal Rule of Evidence 801(a)(1) defines as "an oral or written assertion." One possible meaning, "a report or narrative," Webster's Third New International Dictionary 2229, defn. 2(a)(1961), connotes an extended declaration. Under this reading, Harris' entire confessioneven if it contains both self-inculpatory and non-self-inculpatory partswould be admissible so long as in the aggregate the confession sufficiently inculpates him. Another meaning of "statement," "a single declaration or remark," ibid., defn. 2(b), would make Rule 804(b)(3) cover only those declarations or remarks within the confession that are individually self-inculpatory. See also id., at 131 (defining "assertion" as a "declaration"); id., at 586 (defining "declaration" as a "statement").
Although the text of the Rule does not directly resolve the matter, the principle behind the Rule, so far as it is discernible from the text, points clearly to the narrower reading. Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true. This notion simply does not extend to the broader definition of "statement." The fact that a person is *1339 making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.
... And when part of the confession is actually self-exculpatory, the generalization on which Rule 804(b)(3) is founded becomes even less applicable. Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements.
Williamson, 512 U.S. at 599-600, 114 S.Ct. at 2434-35. Thus, under Williamson a nontestifying codefendant's confession which also implicates the defendant can be admitted in their joint trial only if it sensibly and fairly can be redacted to include only those statements which are solely self-inculpatory vis-a-vis the codefendant. See § 90.108, Fla. Stat. (1995); see also Richardson v. Marsh, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). For example, Justice Kennedy noted in his separate opinion in Williamson:
In the criminal context, a self-serving statement is one that tends to reduce the charges or mitigate the punishment for which the declarant might be liable. See M. Graham, Federal Practice and Procedure, § 6795, p. 810, n. 20 (1992). For example, if two masked gunmen robbed a bank and one of them shot and killed the bank teller, a statement by one robber that the other robber was the triggerman may be the kind of self-serving statement that should be inadmissible. See ibid. (collateral self-serving statement is "John used the gun"). (The Government concedes that such a statement may be inadmissible. See Brief for United States 12.)
Under Williamson and Richardson, a codefendant's confession which in fact partially exonerates or reduces the culpability of the codefendant by implicating or shifting the blame to another defendant is not a statement against the codefendant's interest. Such a statement is admissible in a joint trial with another defendant only if the statement falls within another hearsay exception, and none has been suggested here.
Under this analysis, the testimony of Detective Diecidue as to the oral confession of Ricardo Gonzalez as well as the taped recording of Gonzalez's confession were erroneously admitted into evidence. While portions of Detective Diecidue's testimony and Gonzalez's taped confession concerned solely self-inculpatory statements made by Gonzalez, other portions directly implicated defendant Franqui and also served to exonerate codefendant Gonzalez. Both Gonzalez's confession and the detective's testimony described Franqui as the mastermind behind the robbery, who involved Gonzalez and the other participants in the plan and otherwise played the leading role in their criminal activity. Gonzalez's confession and the detective's' testimony identify Franqui as the procurer of the stolen cars, the supplier of Gonzalez's weapon, and the first shooter, who fired at the victim three to four times while Gonzalez shot only once. Consequently, those statements were inadmissible under the Florida Evidence Code and Williamson.

HARMLESS ERROR
Further, because Gonzalez's confession placed the bulk of the blame for the robbery and murder on Franqui, I cannot find that this error was harmless under State v. DiGuilio, 491 So.2d 1129 (Fla.1986) (error harmless only if there is no reasonable possibility that the error contributed to the conviction). It is reasonable to assume that a jury would utilize a statement placing the majority of the blame on Franqui in deciding upon a verdict and sentence against him, since that was the very reason advanced by the State for seeking to use the statement in evidence against him in the first place.
KOGAN, C.J., concurs.
HARDING, Judge, dissenting.
I dissent from the majority opinion in regard to the jury selection issue. Franqui argues that the trial court erred in denying his use of peremptory challenges to excuse two prospective jurors from the jury. While *1340 I find no error as to one of the prospective jurors, I find the record to be barren of any support for the trial court's denial of Franqui's peremptory challenge of prospective juror Diaz. Because I find that this issue requires reversal of Franqui's conviction, I dissent from the majority opinion.
I dissent for the following reasons: 1) The majority has abandoned this Court's precedent that requires the party objecting to the use of a peremptory challenge to carry the burden to trigger a Neil[10] inquiry and mandates that the record demonstrate that the challenged person is a member of a distinct racial group. 2) The majority opinion sets up a double standardone requiring a defendant to meet specific requirements before a Neil inquiry is necessary while allowing the State to trigger a Neil inquiry without meeting the same requirements. 3) By approving the trial court's handling of this matter, the majority confirms the trial court's assertion that peremptory challenges no longer exist. 4) By any standard, even if the State properly triggered a Neil inquiry, the reasons ultimately given by the defendant for the challenge were race-neutral and sufficient to support the challenge.

I.
The majority opinion essentially forsakes this Court's precedent regarding Neil inquiries. When Franqui attempted to peremptorily strike from the venire Aurelio Diaz, the State objected but offered no explanation nor basis of any kind for the objection. The initial colloquy on the issue was as follows:
MS. BRILL: Wait a minute, Judge, are they striking Aurelio Diaz? State would challenge that strike.
THE COURT: On Aurelio Diaz, let me hear your reasons. Mr. Diaz [the defense counsel], your grounds?
MR. DIAZ: I don't like him.
THE COURT: Okay, that, in that case I will have to disallow that being the reason, I will have to disallow your strike. As it is not a race-neutral reason.
I believe that the State's objection here was insufficient to require the defendant, the party exercising the peremptory challenge, to justify his peremptory strike. This record simply does not demonstrate that the challenged juror was a member of a protected group or that the challenge appeared to be used in a racially discriminatory manner. It is a stretch of the imagination and beyond logic how the majority, as the appellate court charged with reviewing the trial court's action, can conclude from this record that "the trial court clearly understood that the objection to the challenge of a venireperson in Dade County, who was born and raised in Havana, Cuba, and whose name was Aurelio Diaz, was being made on racial grounds." Majority op. at 1335. In fact, at oral argument, the State candidly conceded that we cannot know from this record whether the challenged juror was a member of a distinct racial group, or whether his color or national origin was even the basis of the State's objection to the strike.
In Windom v. State, 656 So.2d 432, 437 (Fla.), cert. denied, ___U.S.___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995), this Court expressly rejected a capital defendant's claim that his objection to the State's use of a peremptory challenge was sufficient to require a Neil inquiry. In Windom, we affirmed a capital conviction and death sentence and held that the defendant had failed to carry his initial burden in objecting to the State's use of a peremptory challenge to excuse an East Indian woman. We stated that the law
requir[ed] a Neil inquiry when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner. However, a timely objection and a demonstration on the record that the challenged person is a member of a distinct racial group have consistently been held to be necessary.

Id. at 437 (emphasis added). Specifically, we observed that defense counsel did not make a timely objection which demonstrated on the record that the prospective juror was a member of a cognizable class. We concluded "that the defendant's expressed objection did not make it necessary for the trial court to *1341 require the State to have and express a race-neutral reason for the challenge." Id. We also reaffirmed the principle that a timely objection and demonstration on the record that the challenged juror is a member of a distinct racial group is a necessary prerequisite to trigger a Neil inquiry. Id.
Under our recent decision in Melbourne v. State, 679 So.2d 759 (Fla.1996),[11] we have continued to impose a substantial burden on the party objecting to the exercise of a peremptory challenge by the other side:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venire-person is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
Id. at 764 (emphasis added) (footnotes omitted). When a party objects to an opposing party's use of a peremptory challenge, the basis of the objection and the challenged juror's race or ethnicity cannot be left to inference. Rather, the party objecting to the challenge must demonstrate on the record that the juror is a member of a particular group at the time the objection is made. Id.
In the instant case, the State's objection failed to claim that the peremptory challenge was being used in a racially discriminatory manner and also failed to demonstrate on the record that the challenged juror was a member of a protected group. Not only did the State fail to demonstrate the racial or ethnic identity of the challenged juror on the record as the defendant in Windom similarly failed to do, but the record also fails to reflect that anyone, including the trial court, demonstrated such identity on the record. This Court has repeatedly stated that "peremptories are presumed to be exercised in a nondiscriminatory manner." Melbourne, 679 So.2d at 764; Neil, 457 So.2d at 486. Without a clear record to support the trial court's denial of Franqui's peremptory challenge, I cannot agree with the majority that the trial court's action "was not clearly erroneous." Majority op. at 1335.

II.
I am also distressed that in its holding affirming the trial court, the majority has instituted a double standard for reviewing trial court rulings relating to peremptory challenges. Here, the majority has determined that the State's general objection was sufficient to trigger a Neil inquiry. However, in other cases where a defendant has objected to the State's use of a peremptory challenge, this Court has concluded that the objecting defendant must meet very specific requirementsstate adequate reasons to initiate a Neil inquiry and create a record adequate to review. Windom; Melbourne. I would apply the same requirements without regard to who the objecting party is. Not only should what's good for the goose be good for the gander, but also what cooks one party's goose should also cook the other's.

III.
The error here is compounded by the majority's apparent approval of the trial court's erroneous assertion that "peremptory challenges no longer exist."[12] By accepting the State's position that the objection here was sufficient to trigger a Neil inquiry, the majority essentially approves this view. If nothing more that a general objection can thwart the use of peremptory challenge, then we do eliminate peremptory challenges as they have been used historically and substitute in their place two classes of challenges for cause.

*1342 IV.
Finally, even if I agreed with the majority that the State had properly raised the issue of the discriminatory use of a peremptory challenge in the first instance, I could not conclude that Franqui's proffered reasons for striking Diaz were insufficient to justify his peremptory challenge. Subsequent to the initial exchange concerning juror Diaz, Franqui's counsel informed the court of additional "race-neutral" reasons for objection to Diaz, including his lengthy employment by Metropolitan Dade County:
We would renew our peremptory based upon the fact that Mr. Diaz has had the same job basically for the last thirty years and we feel that he lacks the life experience and variety of occupations that we are looking for on this jury. He also stated that he has two daughters, he has never had a problem with the daughter and he may not sympathize with our defendants who I am sure have given their parents many, many problems in the past, so based on that, we would try to excuse Mr. Diaz.... In addition to that Judge, many of the witnesses who are expected to testify for the state in this case are employed by Metropolitan Dade County. Which he has an allegiance with them for over thirty years in the county.
The trial court ruled that these were not race-neutral reasons for the challenge; the majority characterizes them as an "afterthought." Majority op. at 1335. I cannot agree with either conclusion.
Peremptory challenges may be exercised up to point where the jury is sworn. Fla. R.Crim. P. 3.310 ("The state or defendant may challenge an individual prospective juror before the juror is sworn to try the cause...."). A renewed peremptory challenge based upon additional reasons should not be dismissed as an "afterthought"[13] and must be assessed under the same standard as the original challenge.
As the United States Supreme Court recently explained in Purkett v. Elem, 514 U.S. 765, 768-69, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995), the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. After the opponent of a peremptory challenge has made out a prima facie case of racial discrimination, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. 514 U.S. at 767, 115 S.Ct. at 1770. If a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. Id. The explanation offered by the party attempting to exercise the peremptory challenge need not be "persuasive, or even plausible." Id. at 768, 115 S.Ct. at 1771. Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral. Id. Only after these two steps have been met does the persuasiveness of the proffered justification become relevant and then only in the context of determining "whether the opponent of the strike has carried his burden of proving purposeful discrimination." Id.
In the instant case, the majority has disregarded its prior pronouncements relating to the burdens involved. The majority concludes that the trial court "clearly understood" that the State's objection was being made on racial grounds, "especially ... because there was never any contention made to the trial court that prospective juror Diaz was not a member of a cognizable minority or that there should not be a Neil inquiry." Majority op. at 1335. Instead of determining whether the State proved purposeful racial discrimination, the majority has placed the burden on the defendant to prove a lack of discriminatory intent in exercising this peremptory challenge. While "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination," Purkett, 514 U.S. at 768, 115 S.Ct. at 1771, I cannot agree with the trial court or the majority that the defendant's justifications here fall into that realm. Thus, I could not sanction the trial court's conclusion *1343 here even if I found that the State had made a prima facie case of racial discrimination.
Finally, my previously stated concern that this Court is creating a double standard requiring defendants to meet higher requirements than the State is born out by our decision in Smith v. State, 699 So.2d 629 (Fla.1997). I concurred in that opinion in which the Court affirmed a trial judge's ruling to sustain the State's peremptory challenge of an African-American juror over a properly raised Neil objection by the defense. The State submitted the following race-neutral reasons to strike the juror in question: "(1) her occupation as a guidance counselor; (2) the possibility she would err on the side of life during the penalty phase; and (3) her reference to Oprah Winfrey." Smith, 699 So.2d at 636. This Court concluded that the trial court's decision to sustain the strike was not clearly erroneous. Id. at 637. Certainly, the reasons stated by the defense in the instant case are as race-neutral as those approved by this Court in Smith. I find it strange that, although they come out of the same pot, the defendant's goose gets cooked and the State's does not.

CONCLUSION
For the reasons stated above, I conclude that the trial court erred in prohibiting defense counsel from striking Diaz. As a result, and over Franqui's objection, juror Diaz was improperly allowed to remain on the jury that ultimately convicted Franqui and recommended a sentence of death. Such error is not subject to a harmless error review and requires a new trial. See United States v. Annigoni, 96 F.3d 1132 (9th Cir.1996) (finding that erroneous denial of peremptory challenge is not subject to harmless error analysis and requires automatic reversal).
KOGAN, C.J., and ANSTEAD, J., concur.
NOTES
[1] One count of aggravated assault and the unlawful possession of a firearm while engaged in a criminal offense were nol prossed by the State after its opening statement.
[2] San Martin also made a confession to police, in which he stated that the robbery was planned by a black friend of the codefendant Fernandez and that the planning occurred at Fernandez's apartment. San Martin admitted that he had grabbed the money tray during the robbery but could not say who carried guns or did the shooting.
[3] In this case, defense counsel accepted the jury panel "subject to our previous objection," but then allowed the trial court to define his objection as limited to jurors "Diaz, Andani and Weaver." At no time did defense counsel renew his objection to juror Pascual or otherwise disabuse the trial court of the notion that his objection to the jury was not limited to the three jurors specifically identified by the court.
[4] First, as Franqui concedes, the allegedly inflammatory comments made during the state's opening statement received no objection and therefore are unpreserved. Castor v. State, 365 So.2d 701 (Fla.1978). Similarly, we decline to address the alleged prosecutorial misconduct in relation to bank teller Hadley's testimony because it too failed to receive a sufficient objection. See Ferguson v. State, 417 So.2d 639, 641 (Fla.1982) (holding that objections must be made with sufficient specificity to apprise trial court of potential error and preserve point for appellate review). Finally, the potential error in allowing Ms. Chin-Watson, another bank teller whom the victim in this case was escorting when he was shot, to testify about her friendship with Officer Bauer was objected to at trial. Nevertheless, we find that Chin-Watson's brief statement, even if improper, was harmless beyond a reasonable doubt. See Stein v. State, 632 So.2d 1361, 1367 (Fla.1994) (finding brief humanizing comments do not constitute grounds for reversal).
[5] In State v. Neil, 457 So.2d 481 (Fla.1984), we first authorized trial courts to make inquiry into whether peremptory challenges were being exercised for racial reasons.
[6] We also reject Franqui's contention that the trial court erred in refusing to permit him to challenge prospective juror Ondani.
[7] Unlike the Federal Evidence Code, see Fed. R.Evid. 804(b)(5), the Florida Evidence Code does not contain a "catch-all" exception to the hearsay rule. The federal "catch-all" exception admits any hearsay statement, even though it is not admissible under a listed exception, which possesses the same guarantees of trustworthiness as do the listed exceptions.

I would not foreclose the possibility that a confession obtained in a non-custodial, non-interrogatory setting may qualify under a different hearsay exception, such as the "excited utterance" or "spontaneous statement" exceptions. See § 90.803(1), (2), Fla. Stat. (1995).
[8] The corollary provision of the Federal Evidence Code is found under rule 804(b)(3).
[9] The Supreme Court planted the seed for its reasoning set out in Williamson in Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), where it rejected the State of Illinois' categorization of the codefendant's confession as a simple "declaration against penal interest." The Court explained that this specific hearsay exception "defines too large a class for meaningful Confrontation Clause analysis." Lee at 544 n. 5, 106 S.Ct. at 2063-64 n. 5.
[10] State v. Neil, 457 So.2d 481 (Fla.1984).
[11] I recognize that the trial judge in this case did not have the benefit of our decisions in Melbourne and Windom. However, those opinions merely restate the requirements that this Court has set forth in opinions rendered before the trial here. See Melbourne, 679 So.2d at 764 nn. 2-5; Windom 656 So.2d at 437.
[12] Before the discussion as to juror Diaz, the trial court refused to allow a prior peremptory challenge. In explaining its reasoning in refusing the challenge, the court stated:

Personally I think that the entire body of law in this area is outrageous, but it is clear that peremptory challenges no longer exist, and that neutral reasons must be given and you have not given me any.
[13] The trial court did not treat the renewed challenge as an afterthought and ruled that the additional reasons were not race-neutral.