700 So.2d 1217 (1997)
Ricardo GONZALEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 84841.
Supreme Court of Florida.
September 18, 1997.
Rehearing Denied October 30, 1997.
William M. Norris of the Law Offices of William M. Norris, P.A., Coral Gables, for appellant.
Robert A. Butterworth, Attorney General, and Randall Sutton, Assistant Attorney General, Miami, for appellee.
PER CURIAM.
This is an appeal from a judgment of guilt and sentence of death upon Ricardo Gonzalez. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.

FACTS
The defendant, Ricardo Gonzalez, along with codefendants Pablo San Martin, Leonardo Franqui, Fernando Fernandez, and Pablo Abreu were charged with first-degree murder of a law enforcement officer, armed robbery with a firearm, aggravated assault, unlawful possession of a firearm while engaged in a criminal offense, grand theft in the third degree, and burglary.[1] Gonzalez, Franqui, and San Martin were tried together before a jury in May, 1994.
The record reflects that the Kislak National Bank in North Miami, Florida, was robbed by four gunmen on January 3, 1992. The perpetrators made their getaway in two stolen grey Chevrolet Caprice cars after taking a cash box from one of the drive-in tellers. During the robbery, police officer Steven Bauer was shot and killed. Shortly after the robbery, the vehicles were found abandoned two blocks west of the bank.
*1218 Approximately two weeks later, Gonzalez was stopped by police after leaving his residence on January 18, 1992. He subsequently made unrecorded and recorded confessions in which he told police that Franqui had planned the robbery, involved the other participants and himself in the scheme, and chosen the location and date for the crime. He said that Franqui had procured the two stolen Chevrolets, driven one of the cars, and supplied him with the gun he used during the robbery. He further stated that Franqui was the first shooter and shot at the victim three or four times, while he had shot only once. Gonzalez indicated that he shot low and believed he had only wounded the victim in the leg. He was subsequently reinterviewed by police and, among other things, described how Franqui had shouted at the victim not to move before shooting him.[2]
Franqui was also questioned by police on January 18, 1992, in a series of unrecorded and recorded sessions. During his preinterview, Franqui initially denied any involvement in the Kislak Bank robbery, but when confronted with the fact that his accomplices were in custody and had implicated him, he ultimately confessed. Franqui stated that Fernandez had hatched the idea for the robbery after talking to a black male, and he had accompanied the two men to the bank a week before the robbery actually took place. He maintained that the black male friend of Fernandez had suggested the use of the two stolen cars, but denied any involvement in the thefts of the vehicles. According to Franqui, San Martin, Fernandez, and Abreu had stolen the vehicles. Franqui did admit to police that he and Gonzalez were armed during the episode, but stated that it was Gonzalezand not himselfwho yelled at the victim to "freeze" when they saw him pulling out his gun. Franqui denied firing the first shot and maintained that he fired only one shot later.
At trial, over the objection of Gonzalez, the confessions of codefendants San Martin and Franqui were introduced without deletion of their references to Gonzalez, upon the trial court's finding that their confessions "interlocked" with Gonzalez's own confession.
Gonzalez was convicted on all counts, and after a penalty phase trial, the jury recommended death by a vote of seven to five. The trial court followed the jury's recommendation and sentenced Gonzalez to death. Gonzalez raises the following issues on appeal: (1) that the trial court erred in denying Gonzalez's peremptory challenges of jurors Diaz and Andani; (2) that the trial court erred in denying Gonzalez's motion for severance based upon the introduction of the confessions of nontestifying codefendants Franqui and San Martin at their joint trial; (3) Gonzalez was denied an impartial hearing at his penalty phase because of the court's refusal to sever his case and to permit him to cross-examine San Martin's experts; and (4) his death sentence is disproportionate.

JURY SELECTION
Speaking for all three defendants, defense counsel sought to exercise a peremptory challenge to excuse prospective jurors Diaz and Andani from the jury. The State objected to the challenges. The court conducted an inquiry pursuant to State v. Neil, 457 So.2d 481 (Fla.1984), and ultimately struck these challenges. We conclude that the court's determination to strike the challenges of prospective jurors Diaz and Andani was not clearly erroneous. The rationale for approving the striking of the challenge of Diaz is set forth in our opinion relating to the appeal of Franqui arising out of the same case. Franqui v. State, 699 So.2d 1332 (Fla. 1997).

ADMISSION OF CODEFENDANTS' STATEMENTS AGAINST GONZALEZ
Gonzalez also asserts that the trial court erred by permitting the confessions of his codefendants Franqui and San Martin to be admitted against him in their joint trial and by denying his motion to sever his trial *1219 from that of his codefendants. In Franqui v. State, 699 So.2d 1312 (Fla.1997), we discussed in detail the law applicable to the admissibility of a codefendant's confession. In this case, there is no question that both Franqui's confession and San Martin's confession interlocked with Gonzalez's confession in many respects and was substantially incriminating to Gonzalez. Moreover, we cannot say that the totality of the circumstances under which Franqui and San Martin made their confessions demonstrated the particularized guarantee of trustworthiness sufficient to overcome the presumption of unreliability that attaches to accomplices' hearsay confessions which implicate the defendant.
Thus, the admission of the confessions of Franqui and San Martin was error. However, with respect to guilt, we conclude that the error was harmless beyond a reasonable doubt. Not only did Gonzalez confess to participating in the robbery, he also admitted shooting the victim. He does not contest the legality of his confession in this appeal. In addition, it was determined that the fatal bullet came from the gun that Gonzalez was carrying. Gonzalez admitted being with Franqui, and an eyewitness identified Franqui as the driver of one of the stolen cars leaving the scene of the crime. Further, Franqui's fingerprints were found on one of the stolen vehicles. Moreover, Gonzalez consented to a search of his apartment which revealed $1200 of the stolen money in his bedroom closet. Thus, we conclude that there is no reasonable possibility that the erroneous admission of the confessions of Franqui and San Martin contributed to Gonzalez's conviction for felony murder.

PENALTY
We agree, however, that Gonzalez's sentence must be reversed. In Franqui's confession, he said that upon approaching the bank, Gonzalez pulled out a gun and told the security guard not to move. Thereafter, he heard a shot, so he also shot his gun. He said he did not know if the shot he heard was fired by Gonzalez or the security guard, but the evidence later developed that the security guard never fired his gun. On the other hand, Gonzalez said it was Franqui who told the security guard not to move and that Franqui shot the security guard before Gonzalez shot him. He said Franqui fired three or four shots and that he only shot once. Consequently, in determining whether or not Gonzalez should be sentenced to death, we cannot say that the erroneous admission of Franqui's confession which portrayed Gonzalez as the aggressor who had precipitated the shooting was harmless beyond a reasonable doubt. Accordingly, we affirm Gonzalez's convictions but vacate the sentence of death and remand for a new penalty phase proceeding consistent with this opinion.
It is so ordered.
OVERTON, GRIMES and WELLS, JJ., concur.
SHAW, J., concurs in result only as to conviction and concurs as to sentence.
HARDING, J., dissents with an opinion, in which KOGAN, C.J., and ANSTEAD, J., concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN, C.J., concurs.
HARDING, Justice, dissenting.
For the reasons expressed in my dissenting opinion in Franqui v. State, 699 So.2d 1332 (Fla.1997), I dissent from the majority's resolution of the jury selection issue regarding juror Diaz in this case. Id., at 1339-1343 (Harding, J., dissenting). Because I conclude that Gonzalez's peremptory challenge was improperly denied, I would reverse his convictions and remand for a new trial.
KOGAN, C.J. and ANSTEAD, J., concur.
ANSTEAD, Justice, dissenting.
I dissent for the same reasons that are discussed in detail in the separate opinions in Franqui v. State, 699 So.2d 1332 (Fla.1997). I agree with Justice Harding's opinion on the juror selection issue. Further, it is apparent that trying these several defendants together and erroneously utilizing the hearsay out-of-court statements of each of them against one *1220 another severely prejudiced the defendants in both the guilt and penalty phases of the trial. It would have been virtually impossible for the jury not to have considered the erroneously admitted co-defendants' statements as major building blocks in the case against appellant. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
KOGAN, C.J., concurs.
NOTES
[1] One count of aggravated assault and the unlawful possession of a firearm while engaged in a criminal offense were nol-prossed by the State after its opening statement.
[2] San Martin also made a confession to police, in which he stated that the robbery was planned by a black friend of the codefendant Fernandez and that the planning occurred at Fernandez's apartment. San Martin admitted that he had grabbed the money tray during the robbery, but could not say who carried guns or did the shooting.