WILSON, Circuit Judge,
dissenting:
This case involves unquestionably improper conduct and an inexcusable omission on the part of a death-row inmate’s habeas counsel. A claim that is based on “habeas counsel’s omissions, ordinarily does not go to the integrity of the proceedings .... ” Gonzalez v. Crosby, 545 U.S. 524, 125 S.Ct. 2641, 2648 n. 5, 162 L.Ed.2d 480 (2005) (emphasis added) (citation omitted). This case is not “ordinary” and I would hold that since Franqui’s habeas counsel’s omission and misrepresentations offend the integrity of the proceedings, his Rule 60(b) motion is not second or successive.[1] I would vacate the district court’s judgment and remand for an evidentiary hearing and ruling on the merits of Franqui’s Rule 60(b) motion (without consideration of the underlying merits of Franqui’s Bruton claim).
I.
Franqui’s allegations are taken as true for the purposes of this appeal. See Zakrzewski v. McDonough, 490 F.3d at 1265. During his post-conviction proceedings, (1) Franqui repeatedly emphasized to his habeas counsel (M.B.) the strength and importance of his Bruton claim; (2) M.B. agreed that Franqui’s Bruton claim was viable and that she would include it in the federal habeas petition; (3) M.B. assured Franqui’s direct-appeal counsel that she would raise the Bruton issue in the federal petition after he expressed to Franqui and M.B. that the claim had a significant chance of succeeding in federal court; (4) Franqui mailed M.B. at least sixteen letters referencing the Bruton issue, and M.B. wrote at least seven letters doing the same; (5) Franqui and M.B. exchanged, by mail, recent cases discussing Bruton-, and (6) Franqui and M.B. focused on Bruton in several phone calls. Moreover, after the State filed a lengthy response to the federal habeas petition, Franqui remarked that it must have had difficulties countering his Bruton claim, at which point M.B. said nothing. Far from alleging that the omission was the result of mere negligence, these allegations depict attorney dishonesty, incompetence, and disregard for the clearly expressed wishes of one’s client.[2]
*1376 The egregious nature of M.B.’s omission is further highlighted by an undisputed fact. On direct appeal, the Florida Supreme Court concluded that there was, indeed, a Bruton error. See Franqui v. State, 699 So.2d 1332 (Fla.1997) (per curiam). The Court ruled that the error was harmless as to Franqui’s guilt, but remanded the case for re-sentencing. Id. at 1336. Two justices, however, concluded that the error necessitated a new trial. Id. (Anstead, J., concurring). These favorable opinions on direct appeal explain Franqui’s insistence on arguing the Bruton claim and further support its inclusion in the federal petition.
II.
The majority repeatedly states that the district court denied Franqui’s Rule 60(b) motion on the merits. See, e.g., Majority Op. at 1369 (“The District Court considered and denied — on its merits — Petitioner’s Rule 60(b) motion.... ”). I disagree with that characterization. The majority, incorrectly in my view, conveys that the district court “considered [the] substance” of Franqui’s Rule 60(b) motion and determined it lacked merit. Majority Op. at 1374-75. It did not. Instead, the district court concluded that the underlying Bruton claim, which was not and could not have been briefed, lacked merit.
The district court denied the Rule 60(b) motion because “[e]ven if Franqui’s counsel’s failure to raise his Bruton claim constitutes some form of mistake, inadvertence, or excusable neglect cognizable under Rule 60(b), his Bruton claim is without merit.” I firmly believe, however, that consideration of the underlying Bruton claim must be inappropriate when assessing the merits of a Rule 60(b) motion in this context.
To require a petitioner filing a Rule 60(b) motion to show that the omitted claim has merit places him between Scylla and Charybdis. The petitioner must either (1) argue the merits of the omitted claim, and have his motion dismissed because Rule 60(b) motions “cannot be used by habeas petitioners to raise new claims for habeas relief,” Majority Op. at 1371; or (2) avoid discussion of the underlying issue, and have his motion dismissed because the court believes the underlying claim lacks merit — without having heard any arguments on it. This is markedly different from an ordinary civil case, in which both parties may present the merits of the underlying claim. In the present context, this requirement eliminates Rule 60(b) relief for habeas petitioners whose counsel have omitted a claim in bad faith. Accordingly, I would conclude that, in a post-Gonzalez regime, district courts cannot consider the merits of the omitted claim in determining whether Rule 60(b) relief is appropriate.
III.
The majority contends that “[t]oday’s decision does not create a ‘categorical rule’ against permitting a habeas petitioner to seek 60(b) relief after his previous habeas petition has been denied on the merits.” Majority Op. at 1374, n. 9. It may be true that the majority does not foreclose the *1377 possibility that a petitioner can ever file a proper Rule 60(b) motion after his or her original petition has been denied on the merits. It does, however, create another categorical rule: habeas petitioners cannot seek Rule 60(b) relief for habeas counsel’s omissions.
The egregious nature of the misconduct alleged in this circumstance makes it so. Assuming the truth of Franqui’s allegations, M.B.’s omission is incomprehensible. While I agree that, ordinarily, “[a]n omission alone does not amount to a defect in the integrity of the proceedings,” Majority Op. at 1373, I disagree that in that this case involves an “omission alone.” M.B.’s omission occurred after she received sixteen letters and sent seven letters discussing the Bruton claim. M.B.’s omission occurred after she assured previous counsel that she would raise the claim in the federal petition. M.B.’s omission occurred after Franqui mailed her recent cases on Bruton and its progeny, and she did the same. And M.B.’s omission occurred after the Florida Supreme Court granted partial relief on the claim. If Franqui’s allegations are proven true, negligence could hardly explain this error. Instead, M.B.’s omission is “grossly negligent to be sure....” Thomas v. McNeil, No. 3:03-cv-00237 (M.D.Fla. Feb. 10, 2009) (concluding that M.B., in other federal habeas cases, engaged in behavior that “set[ ] her conduct above mere professional negligence, and [rose] to the level of bad faith.”).
Even ignoring the facts discussed above, the majority realizes it must explain away M.B.’s deliberate failure to inform Franqui that the claim had been omitted because that action would provide clear evidence that M.B.’s mental state was sufficiently culpable under any standard.[3] It is uncontested that Franqui signed a document given to him by his lawyer indicating that he had read the habeas petition. In isolation, however, that fact does not defeat his claim that the integrity of the proceedings were corrupted in this case.[4] Franqui continually expressed his desire to include the Bruton claim and relied on his counsel to do just that while he served his sentence.[5] While Franqui erred by failing to *1378 read the entire document, M.B.’s intentional submission of a document containing a material misrepresentation further demonstrates her level of misconduct. She sent Franqui only the signature page, thereby ensuring that he could not read the petition. M.B.’s initial omission was exacerbated by her continued concealment of it and, in this case, sufficiently detracted from the integrity of the proceedings to take this case out of the realm of “ordinary” claim-omission cases. If such conduct is ordinary, it is because the standards for practitioners of law have been unacceptably lowered. Assuming the truth of his allegations, M.B.’s omission resulted from either (1) something more than negligence or (2) a level of gee-golly, aw-shucks lawyering that is completely unacceptable in capital cases. I would not allow Franqui to be deprived of the right to file his desired habeas petition because of our failure to expect competent representation in life-and-death cases.
If M.B.’s omission, after all of the alleged communication on the topic, does not allow for a proper Rule 60(b) motion, then none can. This conflicts with the Supreme Court’s statement that a habeas counsel’s omission “ordinarily does not go to the integrity of the proceedings.... ” Gonzalez, 125 S.Ct. at 2648 n. 5 (emphasis added). I disagree with the majority that “[i]t is a serious problem for a court to have worked on a habeas petition and decided its merit, only to have a petitioner later come in and say, ‘Wait, there’s more,’ ”[6]— that is, when the petitioner continues, “because my lawyer lied to me.” The majority eviscerates Rule 60(b) in this context, which the Supreme Court was unwilling to do in Gonzalez.[7] The Court acknowledged a small, but existent, group of cases that would provide relief for extraordinary omissions by counsel.
TV.
The burden for a petitioner to demonstrate that his Rule 60(b) motion is not a second or successive habeas petition is high. In my view, rightfully so. But a high burden is not meant to eliminate the possibility that a habeas petitioner can obtain Rule 60(b) relief for an extraordinary omission by counsel. If Franqui’s allegations surrounding M.B.’s omission do not rise to a level warranting relief, no claim-omission case will. Franqui, despite exerting tremendous effort to ensure inclusion of a claim, was never given the opportunity to present his most persuasive federal constitutional claim in federal court as a result of bad-faith actions by his own counsel. The majority’s position provides him with no recourse. I cannot agree with such a result.

. “If Petitioner's 60(b) motion is not really a second or successive habeas petition, the district court has jurisdiction to consider the merits of the motion.” Zakrzewski v. McDonough, 490 F.3d 1264, 1265 (11th Cir.2007) (per curiam).

. The majority denies Franqui's claim, in part, based on the fact that "he has not alleged that the actual omission of the Button claim was, in fact, intentional on M.B.’s part.” Specifically, Franqui’s pro se Rule 60(b) motion “never alleges M.B. actually intended to omit the claim.” First, and most importantly, gross negligence should be sufficient to warrant relief. The majority imposes *1376 this heightened burden on Franqui without legal support for doing so. Under the majority’s rubric, anything short of an intentional omission, such as a grossly negligent one, is "ordinary” and thus is not cognizable after Gonzalez. Requiring proof of M.B.’s subjective intent is an incredible burden.
Courts recognize, whether it be in the context of torts or criminal law, that in some contexts an ordinarily negligent act can only be explained by something more. If a capital defendant’s attorney’s omission falls into the that category, Rule 60(b) relief is appropriate. Furthermore, the majority creates unrealistic expectations for a pleading that must be filed pro se specifically because of appointed counsel’s failures.

. The majority makes an incredible distinction on this point. It explains its decision to excuse M.B.'s post-omission concealment by pointing out that she did not "affirmatively represent! ] that something was in the petition which was actually not in it.” Majority Op. at 1373 n. 5. Instead, she heard Franqui say that the state must be having a difficult time countering the Bruton claim and she simply let the conversation proceed. I part company with my colleagues in adopting this logic. M.B. adopted the premise of Franqui’s statement, i.e., the BnA.ton claim was there to counter. The law recognizes that silence can be construed as a constructive admission where one would be expected to speak and does not. See Fed.R.Evid. 801 n.(d)(2)(B) (“Under established principles an admission may be made by adopting or acquiescing in the statement of another.”). M.B.'s failure to correct indicated that Franqui's Bruton claim was included in his petition, and Franqui was justified in inferring the same. The majority’s conclusion — that such a sin by silence is somehow less reprehensible than an affirmative misrepresentation — is one that I cannot join.

. In the abstract, I could conceive of a situation where the petitioner’s decision to sign the habeas petition would be a sufficient ratification of counsel's omission so as to justify denial of relief. But, in light of the facts presented, that cannot be the proper basis for deciding this appeal.

. The majority emphasizes that, although incarcerated, there was no urgency in Franqui signing the habeas petition. Rather, he should have insisted on seeing the petition before signing it. While I agree that he should have read the entire document before completing the mandatory signature page, I view Franqui’s neglect in light of his situation. Nothing indicates he possessed a familiarity with the particular deadlines in his case. Had he requested a copy of the complete petition, and had he missed an AEDPA *1378 deadline while waiting for M.B. to produce it — no outlandish scenario, given M.B.'s history and conduct — we would undoubtedly have affirmed a district court's dismissal of the petition. Franqui is not an ordinary civil litigant, see Majority Op. at 1373 n. 6, but rather an incarcerated habeas petitioner that went to exceptional lengths to ensure the inclusion of his Bmton claim.

. Majority Op. at 1373-74.

. Presumably, Justice Scalia, writing for the majority of the Supreme Court, meant what he wrote. Therefore, while it is not ordinarily the case, there must be some situation in which habeas counsel's omissions would go to the integrity of the proceedings and allow a habeas petitioner to seek relief from judgment based on Rule 60(b).