[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2011
JOHN LEY
CLERK

_____

No. 09-12626

_____

D. C. Docket No. 07-22384-CV-KMM

LEONARDO FRANQUI,

Petitioner-Appellant,

versus

STATE OF FLORIDA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 22, 2011)

Before EDMONDSON, HULL and WILSON, Circuit Judges.

EDMONDSON, Circuit Judge:

After his habeas petition, 28 U.S.C. § 2254, was denied, on its merits, by the

District Court, Petitioner filed a motion for relief from the District Court's judgment pursuant to Federal Rule of Civil Procedure 60(b).

Briefly stated, the basis for this motion was Petitioner's assertion that, despite his court-appointed lawyer's repeatedly promising to do so, the lawyer failed to raise a specific federal habeas claim which Petitioner believed to be particularly strong. (Other claims were raised.) Petitioner's motion further asserted that his lawyer did not inform him of this omission even after Petitioner's habeas petition was filed. Petitioner says he did not learn that the pertinent claim was left out until he received a copy of the federal habeas petition after the District Court had already denied the petition. The District Court considered and denied -- on its merits -- Petitioner's Rule 60(b) motion; we vacate and remand with instructions to dismiss the motion for lack of subject-matter jurisdiction.

## BACKGROUND

With the assistance of his court-appointed counsel (M.B.), Petitioner -- a Florida state prisoner -- filed a petition for a writ of habeas corpus in federal court, raising several claims. The District Court denied the petition on the merits. Following this decision, Petitioner, by his counsel, filed a series of motions with

2

the District Court.  Petitioner then filed a <u>pro se</u> motion for relief from the judgment pursuant to Rule 60(b).[1]

In the Rule 60(b) motion, Petitioner alleged that he had repeatedly instructed his court-appointed habeas lawyer, M.B., to challenge the lawfulness of the admission at Petitioner's trial of a co-defendant's confession; the habeas challenge was to be grounded on <u>Bruton v. United States</u>, 88 S. Ct. 1620 (1968).  Petitioner further alleged that M.B. had promised to include this <u>Bruton</u> claim in Petitioner's federal habeas petition.  But no such claim was included in the habeas petition that M.B. filed with the District Court.  Petitioner says he remained unaware of the omission because M.B. sent him only the verification page of his habeas petition: Petitioner was required to sign this page.  Petitioner says that he, trusting in his lawyer, signed and returned this one page without ever seeing the actual petition.

Petitioner further alleges that M.B. did not alert him to the omission, even when Petitioner mentioned the <u>Bruton</u> issue during a telephone conversation with

---

[1] Rule 60(b) reads this way:
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.  FED. R. CIV. P. 60(b).

M.B. after the State submitted its 256-page response to the filed habeas petition.

According to Petitioner, he did not learn that M.B. had left out the Bruton claim

until after his habeas petition had been denied. Petitioner's 60(b) motion

characterized M.B.'s acts as "misrepresentations rising to the level of gross

attorney negligence and/or outright abandonment of [Petitioner's] most viable

constitutional claim," entitling Petitioner to relief from the District Court's

judgment.[2]

The District Court considered and denied -- on its merits -- the Rule 60(b)

motion; this appeal followed.

DISCUSSION

At the outset, we must decide whether Petitioner's motion for relief from the

District Court's judgment was a true Rule 60(b) motion or was instead, as the State

---

[2] For background, see Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1170-71 (9th Cir. 2002) (concluding that the defendant was entitled to 60(b) relief where his lawyer's gross negligence led to a default judgment against the defendant and the lawyer had repeatedly misrepresented to the defendant that the case was proceeding smoothly); Ervin v. Wilkinson, 701 F.2d 59, 61-62 (7th Cir. 1983) (remanding for consideration of civil-rights plaintiff's 60(b) motion alleging, in part, that the plaintiff's own lawyer had made affirmative misrepresentations to the plaintiff that led the plaintiff to dismiss voluntarily his action); L.P. Steuart, Inc. v. Matthews, 329 F.2d 234, 235 (D.C. Cir. 1964) (concluding, where a lawyer made repeated affirmative misrepresentations to his client that the case was proceeding smoothly when the case had in fact been dismissed for failure to prosecute, that Rule 60(b)(6) "is broad enough to permit relief when . . . [a lawyer] grossly . . . neglect[s] a diligent client's case and mislead[s] the client").

asserts, a second or successive habeas petition that should have been dismissed for lack of jurisdiction (because Petitioner did not comply with the requirements for such petitions).

In resolving this issue, we must ensure that Rule 60(b) is not used to circumvent the restrictions governing federal habeas corpus proceedings set forth by statute: the Antiterrorism and Effective Death Penalty Act ("AEDPA"). While Rule 60(b) permits a party to seek relief from a judgment on certain limited grounds, it cannot be used by habeas petitioners to raise new claims for habeas relief: this use would circumvent the AEDPA requirement that a petitioner obtain the approval of the appropriate court of appeals before filing a second or successive habeas petition. Gonzalez v. Crosby, 125 S. Ct. 2641, 2647-48 (2005); see also 28 U.S.C. § 2244(b)(3)(A).

The Supreme Court's decision and opinion in Gonzalez are instructive on this issue. The Supreme Court said that a habeas petitioner filing a 60(b) motion should be held to the standards of section 2244(b) if his motion contains a "claim" as the term is used in that section -- that is, "an asserted federal basis for relief from a state court's judgment of conviction." Gonzalez, 125 S. Ct. at 2647.

Raising such a claim in a Rule 60(b) motion is an improper attempt to avoid AEDPA's second-or-successive restrictions and is not permitted. See 28 U.S.C.

§ 2244(b)(2) (requiring a new claim presented in a second or successive habeas petition to be dismissed unless it relies on either a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," or a new factual predicate that "could not have been discovered previously" and that would establish the petitioner's innocence by clear and convincing evidence). But a Rule 60(b) motion can be appropriate where a petitioner "does not assert, or reassert, claims of error in [his] state conviction." Gonzalez, 125 S. Ct. at 2651. For example, a 60(b) motion can properly be used just to "assert[] that a previous ruling which precluded a merits determination was in error," id. at 2648 n.4, or just to attack "some defect in the integrity of the federal habeas proceedings," id. at 2648.

When, as is the case here, a federal habeas court has already reached and resolved the merits of a habeas petitioner's earlier asserted claims, we look at a 60(b) motion challenging that decision with particular skepticism.

As Gonzalez tells us, "[i]f neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." Id. at 2648 (emphasis added). But if the federal judgment that is the subject of the 60(b) motion does

6

substantively address the federal grounds that were presented for granting habeas relief, then treating a later motion as properly filed under 60(b) might create an inconsistency with AEDPA.

This clash arises because a motion challenging a federal court's decision that denied, on the merits, habeas relief is often "effectively indistinguishable" from an assertion that the petitioner actually is entitled to habeas relief: the very definition of a habeas claim. Id. at 2648. But a 60(b) motion just attacking a true "defect in the integrity" of the habeas proceedings would not be problematic, because such an attack does not itself raise a claim for habeas relief.

Potential inconsistency with AEDPA looms even where, as here, a Rule 60(b) motion does not itself raise new claims for habeas relief, but rather seeks permission to do so in further proceedings. Gonzalez tells us that, even though such a motion may not directly assert errors in the petitioner's underlying conviction, it still must be treated as a second or successive habeas petition:

> Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction--even claims couched in the language of a true Rule 60(b) motion--circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts. Id. at 2647 (emphasis added).

Petitioner's 60(b) motion is careful to characterize its attack as targeting the omission in the habeas proceeding of his Bruton claim, rather than challenging

7

Petitioner's state conviction on the merits. But in guarding the respective roles of both AEDPA and Rule 60(b), we cannot ignore the basic objective of this motion: it advances an additional claim for habeas relief. The real problem the motion aims at is Petitioner's continued confinement, and the objective it seeks is an additional shot at release by asserting a new claim to be considered on its merits. In deciding this appeal we, however, consider more than these things.

Petitioner does contend that specific defects existed in the habeas proceedings: his lawyer's omission of the <u>Bruton</u> claim after repeatedly promising it would be included and the lawyer's not advising him of this omission, even when Petitioner mentioned the <u>Bruton</u> claim in a conversation after the State submitted its response to the habeas petition.[3] Petitioner argues that his present motion attacked only M.B.'s misconduct and did not assert claims of error in his state conviction; in his view, this approach rendered his motion a proper 60(b)

---

[3] This case is materially different from <u>Zakrzewski v. McDonough</u>, 490 F.3d 1264 (11th Cir. 2007) ("<u>Zakrzewski I</u>"). <u>Zakrzewski</u> is not an omission-by-counsel case. In <u>Zakrzewski</u>, we recognized that a habeas corpus petitioner's challenge to the authority of a specific lawyer to represent the petitioner <u>at all</u> in federal court stated a valid basis for a 60(b) motion seeking relief from judgment in a section 2254 proceeding: Zakrzewski contended that the lawyer who purported to represent him was totally unauthorized to do so because the pertinent lawyer's ostensible authority had been gained, at the start, by fraud on Zakrzewski and, later, by fraud on the district court. <u>See id.</u> at 1266; <u>Zakrzewski v. McNeil</u>, 573 F.3d 1210, 1211 (11th Cir. 2009) ("<u>Zakrzewski II</u>") (summarizing the contents of the pertinent 60(b) motion). But in the present case, no claim has been made that the lawyer, M.B., was entirely without authority to represent Petitioner in the section 2254 proceeding in the District Court. M.B. did, in law and in fact, represent Petitioner, although Petitioner contends that M.B.--by leaving out the <u>Bruton</u> claim-- performed carelessly and not as Petitioner instructed and that M.B. did not disclose to Petitioner the omission of the <u>Bruton</u> claim. This case is an omission-by-counsel case.

motion.

But Gonzalez does not allow us to take so broad a view of what constitutes a defect in the integrity of federal habeas proceedings. Where the federal habeas court has already denied the habeas petition on the merits, "an attack based on . . . habeas counsel's omissions ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." Gonzalez, 125 S. Ct. at 2648 n.5 (internal citation omitted).

We do not consider Petitioner's allegations to be out of the ordinary. While Petitioner, in his Memorandum of Law, conclusionally characterized the omission of his Bruton claim as "egregious and/or extraordinary misconduct and misrepresentations," and as a "fraud upon the court," he has not alleged that the actual omission of the Bruton claim was, in fact, intentional on M.B.'s part.

Petitioner, in his 60(b) motion's Statement of Facts, asserts that M.B. promised to include the Bruton claim and ultimately failed to do so, but Petitioner never alleges M.B. actually intended to omit the claim at the time that M.B. promised to include it or intentionally omitted the claim at the time that it was left out.[4] An omission alone does not amount to a defect in the integrity of the

---

[4] In reading the 60(b) motion, we are sensitive to the motion's having been done by the movant pro se. Nevertheless, we are unwilling to infer fraud from factual allegations that are consistent with M.B.'s simply not taking proper professional care. We see insufficient particularity, although conclusory remarks about fraud and misrepresentations do appear in the motion's

proceedings. See, e.g., Harris v. United States, 367 F.3d 74, 82 (2d Cir. 2004) (Rule 60(b) motion alleging that federal habeas counsel had been ineffective for omitting a Sixth Amendment claim "failed in its attack on the integrity of the habeas proceeding") (cited in Gonzalez, 125 S. Ct. at 2647, as an example of a 60(b) motion that improperly sought to circumvent AEDPA).

Petitioner does allege that M.B. did not disclose the omission to Petitioner, even in their conversation after the habeas petition and the State's 256-page response were filed and before the District Court issued its decision denying Petitioner habeas relief.[5] But given Petitioner's own conduct, this allegation does not strengthen Petitioner's argument in this case for relief based on a defect in the integrity of the proceedings. Petitioner would have known that the Bruton claim had been omitted if Petitioner had actually read the petition before signing its verification; in providing his signature, Petitioner declared to the District Court "under penalty of perjury that the foregoing is true and correct." This sworn statement was made without Petitioner's insisting on first seeing the petition's contents. See Gonzalez, 125 S. Ct. at 2648 n.5 (noting that an attack based upon

_____

Memorandum of Law section.

[5] Petitioner, in setting out the facts to the District Court, never asserted that M.B. actually knew that the Bruton claim had been, in fact, left out of the 29-page (plus attachments) habeas petition that M.B. filed. And this case is not one in which, after a petition was filed, counsel affirmatively represented that something was in the petition which was actually not in it.

10

"the movant's own conduct" does not ordinarily challenge the integrity of the proceedings).

Petitioner misled the District Court, giving it the impression that Petitioner knew (or at least had seen) what was in the habeas petition. It is a serious problem for a court to have worked on a habeas petition and decided its merit, only to have a petitioner later come in and say, "Wait, there's more." Petitioner was supposed to look at the petition before it was presented to the District Court; and by swearing to the petition's truth, he represented to the District Court that he had looked at it.[6]

Petitioner does not allege that he misunderstood the verification or that he was in any way kept from seeing and reading the verification to which he knowingly swore. Nor does he even allege that a need for extraordinary urgency existed for his quickly signing and returning the verifying signature page to ensure that the habeas petition was timely filed. And although Petitioner in his 60(b) motion alleges that he made repeated requests for M.B. to furnish Petitioner with a full copy of his habeas petition, he does not allege that he had made requests before

---

[6] Petitioner was required by law to verify the petition "under penalty of perjury." FED. R. GOVERNING HABEAS P. 2(c)(5). The Supreme Court has held that a party represented by counsel and required to verify a filed document can be sanctioned for failing to conduct the inquiry required by Federal Rule of Civil Procedure 11. Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 111 S. Ct. 922, 929 (1991). See also United States v. Boyle, 105 S. Ct. 687, 693 (1985) (a taxpayer's reliance on his lawyer's advice will not avoid penalty for late filing of a tax return). In a similar way, Petitioner, although he had legal counsel, must take direct, personal responsibility for verifying a filed document that he never read.

11

he signed the petition's verifying signature page. Nor did Petitioner notify the District Court, before the Court ruled on the merits of the habeas petition, that Petitioner had not read the petition and, therefore, that it might be -- as far as Petitioner knew -- false or misleading (or incomplete).[7] Petitioner's own conduct misled the District Court and contributed, in a fundamental way, to the claim-omission of which he now complains.[8]

So, Petitioner has pointed out no defect in the integrity of the federal habeas proceedings that would render his Rule 60(b) motion permissible.[9] In his habeas petition, Petitioner presented several claims to the District Court. After he did so and after the District Court denied -- on the merits -- every claim that Petitioner

---

[7] About ten months passed from the time the petition was filed until it was ruled on by the District Court.

[8] Given that Petitioner's own misconduct lies at the heart of the omission of his Bruton claim from the habeas petition, today's result could hang on Petitioner's conduct alone.

[9] See, e.g., Ward v. Norris, 577 F.3d 925, 932 (8th Cir. 2009) ("Although an assertion of ineffective assistance of habeas counsel may be characterized as a defect in the integrity of the habeas proceeding, it ultimately seeks to assert or reassert substantive claims with the assistance of new counsel."); Post v. Bradshaw, 422 F.3d 419, 424-25 (6th Cir. 2005) (concluding that a habeas petitioner's Rule 60(b) motion that purported to raise a defect in the integrity of the federal habeas proceedings -- based on earlier-habeas counsel's inexcusable neglect -- was actually a second or successive habeas petition, because the motion sought to "tak[e] steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition"). We recall that a petitioner in a federal habeas proceeding has no constitutional right to the effective assistance of counsel. See, e.g., Lawrence v. Florida, 127 S. Ct. 1079, 1085 (2007) (citation omitted). By the way, Petitioner in his 60(b) motion did not contend that he was abandoned by his habeas counsel, M.B. M.B. did litigate several habeas claims to judgment and (by motions) beyond.

12

had raised, AEDPA barred him from raising additional claims without first obtaining this Court's approval. Petitioner's motion for relief from the District Court's judgment, while couched in the terms of a 60(b) motion, was, in effect, an attempt at getting a second opportunity at habeas relief without complying with AEDPA's requirements.

Petitioner's motion "is, if not in substance a habeas corpus application, at least similar enough that failing to subject it to the same requirements would be inconsistent with the statute." Id. at 2647 (internal quotation marks and citation omitted).[10]


CONCLUSION


The District Court treated Petitioner's motion as properly filed under Rule 60(b), considered its substance, and concluded--on the motion's merits--that

---

[10] Today's decision does not create a "categorical rule" against permitting a habeas petitioner to seek 60(b) relief after his previous habeas petition has been denied on the merits. As we have acknowledged, a 60(b) motion still could be properly filed--even after an on-the-merits denial of habeas relief--if the 60(b) motion attacks "some defect in the integrity of the federal habeas proceedings." Gonzalez, 125 S. Ct. at 2648. We write about and decide today only the case before us, considering its set of facts: considering what facts are present and what facts are absent. Some future habeas petitioner might allege, in a 60(b) motion, different facts that would constitute a defect in the integrity of the federal habeas proceedings: a possibility we leave entirely open. See, e.g., Zakrzewski I, 490 F.3d at 1267-68 (habeas petitioner's use of Rule 60(b) allowed).

13

Petitioner was not entitled to relief under that Rule:  that the <u>Bruton</u> issue would not justify federal habeas relief.[11]  Given the Supreme Court's teachings in the <u>Gonzalez</u> opinion, this generous approach was an error:  Petitioner did not qualify to seek Rule 60(b) relief.

Because we conclude that Petitioner's motion raised a new habeas claim without first securing this Court's permission to file a second or successive habeas petition, the District Court lacked subject-matter jurisdiction even to consider Petitioner's claim.  <u>Williams v. Chatman</u>, 510 F.3d 1290, 1295 (11th Cir. 2007) (citing <u>Farris v. United States</u>, 333 F.3d 1211, 1216 (11th Cir. 2003)).  We therefore vacate the District Court's judgment and remand with instructions to dismiss Petitioner's motion for lack of subject-matter jurisdiction.

VACATED AND REMANDED WITH INSTRUCTIONS.

---

[11] We decide nothing today about the merits of Petitioner's <u>Bruton</u> claim.

WILSON, Circuit Judge, dissenting:

This case involves unquestionably improper conduct and an inexcusable omission on the part of a death-row inmate's habeas counsel. A claim that is based on "habeas counsel's omissions, *ordinarily* does not go to the integrity of the proceedings . . . ." *Gonzalez v. Crosby*, 125 S. Ct. 2641, 2648 n. 5 (2005) (emphasis added) (citation omitted). This case is not "ordinary" and I would hold that since Franqui's habeas counsel's omission and misrepresentations offend the integrity of the proceedings, his Rule 60(b) motion is not second or successive.[1] I would vacate the district court's judgment and remand for an evidentiary hearing and ruling on the merits of Franqui's Rule 60(b) motion (without consideration of the underlying merits of Franqui's *Bruton* claim).

I.

Franqui's allegations are taken as true for the purposes of this appeal. *See Zabrzewski v. McDonough*, 490 F.3d at 1265. During his post-conviction proceedings, (1) Franqui repeatedly emphasized to his habeas counsel (M.B.) the strength and importance of his *Bruton* claim; (2) M.B. agreed that Franqui's *Bruton* claim was viable and that she would include it in the federal habeas

---

[1]"If Petitioner's 60(b) motion is not really a second or successive habeas petition, the district court has jurisdiction to consider the merits of the motion." *Zabrzewski v. McDonough*, 490 F.3d 1264, 1265 (11th Cir. 2007) (per curiam).

15

petition; (3) M.B. assured Franqui's direct-appeal counsel that she would raise the

*Bruton* issue in the federal petition after he expressed to Franqui and M.B. that the

claim had a significant chance of succeeding in federal court; (4) Franqui mailed

M.B. at least sixteen letters referencing the *Bruton* issue, and M.B. wrote at least

seven letters doing the same; (5) Franqui and M.B. exchanged, by mail, recent

cases discussing *Bruton*; and (6) Franqui and M.B. focused on *Bruton* in several

phone calls.  Moreover, after the State filed a lengthy response to the federal

habeas petition, Franqui remarked that it must have had difficulties countering his

*Bruton* claim, at which point M.B. said nothing.  Far from alleging that the

omission was the result of mere negligence, these allegations depict attorney

dishonesty, incompetence, and disregard for the clearly expressed wishes of one's

client.[2]

The egregious nature of M.B.'s omission is further highlighted by an

---

[2]  The majority denies Franqui's claim, in part, based on the fact that "he has not alleged that the actual omission of the Bruton claim was, in fact, intentional on M.B.'s part." Specifically, Franqui's *pro se* Rule 60(b) motion "never alleges M.B. actually intended to omit the claim." First, and most importantly, gross negligence should be sufficient to warrant relief.  The majority imposes this heightened burden on Franqui without legal support for doing so.   Under the majority's rubric, anything short of an intentional omission, such as a grossly negligent one, is "ordinary" and thus is not cognizable after *Gonzalez*. Requiring proof of M.B.'s subjective intent is an incredible burden.

Courts recognize, whether it be in the context of torts or criminal law, that in some contexts an ordinarily negligent act can only be explained by something more.  If a capital defendant's attorney's omission falls into the that category, Rule 60(b) relief is appropriate. Furthermore, the majority creates unrealistic expectations for a pleading that must be filed *pro se* specifically because of appointed counsel's failures.

undisputed fact. On direct appeal, the Florida Supreme Court concluded that there was, indeed, a *Bruton* error. *See Franqui v. State*, 699 So. 2d 1332 (Fla. 1997) (per curiam). The Court ruled that the error was harmless as to Franqui's guilt, but remanded the case for re-sentencing. *Id*. at 1336. Two justices, however, concluded that the error necessitated a new trial. *Id*. (Anstead, J., concurring). These favorable opinions on direct appeal explain Franqui's insistence on arguing the *Bruton* claim and further support its inclusion in the federal petition.

## II.

The majority repeatedly states that the district court denied Franqui's Rule 60(b) motion on the merits. *See, e.g.*, Majority Op. at 2 ("The District Court considered and denied -- on its merits -- Petitioner's Rule 60(b) motion . . . ."). I disagree with that characterization. The majority, incorrectly in my view, conveys that the district court "considered [the] substance" of Franqui's Rule 60(b) motion and determined it lacked merit. Majority Op. at 13. It did not. Instead, the district court concluded that the underlying *Bruton* claim, which was not and could not have been briefed, lacked merit.

The district court denied the Rule 60(b) motion because "[e]ven if Franqui's counsel's failure to raise his *Bruton* claim constitutes some form of mistake, inadvertence, or excusable neglect cognizable under Rule 60(b), his *Bruton* claim

17

is without merit." I firmly believe, however, that consideration of the underlying *Bruton* claim must be inappropriate when assessing the merits of a Rule 60(b) motion in this context.

To require a petitioner filing a Rule 60(b) motion to show that the omitted claim has merit places him between Scylla and Charybdis. The petitioner must either (1) argue the merits of the omitted claim, and have his motion dismissed because Rule 60(b) motions "cannot be used by habeas petitioners to raise new claims for habeas relief," Majority Op. at 5; or (2) avoid discussion of the underlying issue, and have his motion dismissed because the court believes the underlying claim lacks merit—without having heard any arguments on it. This is markedly different from an ordinary civil case, in which both parties may present the merits of the underlying claim. In the present context, this requirement eliminates Rule 60(b) relief for habeas petitioners whose counsel have omitted a claim in bad faith. Accordingly, I would conclude that, in a post-*Gonzalez* regime, district courts cannot consider the merits of the omitted claim in determining whether Rule 60(b) relief is appropriate.

### III.

The majority contends that "[t]oday's decision does not create a 'categorical rule' against permitting a habeas petitioner to seek 60(b) relief after his

18

previous habeas petition has been denied on the merits." Majority Op. at 13, n.9. It may be true that the majority does not foreclose the possibility that a petitioner can ever file a proper Rule 60(b) motion after his or her original petition has been denied on the merits. It does, however, create another categorical rule: habeas petitioners cannot seek Rule 60(b) relief for habeas counsel's omissions.

The egregious nature of the misconduct alleged in this circumstance makes it so. Assuming the truth of Franqui's allegations, M.B.'s omission is incomprehensible. While I agree that, ordinarily, "[a]n omission alone does not amount to a defect in the integrity of the proceedings," Majority Op. at 10, I disagree that in that this case involves an "omission alone." M.B.'s omission occurred after she received sixteen letters and sent seven letters discussing the *Bruton* claim. M.B.'s omission occurred after she assured previous counsel that she would raise the claim in the federal petition. M.B.'s omission occurred after Franqui mailed her recent cases on *Bruton* and its progeny, and she did the same. And M.B.'s omission occurred after the Florida Supreme Court granted partial relief on the claim. If Franqui's allegations are proven true, negligence could hardly explain this error. Instead, M.B.'s omission is "grossly negligent to be sure . . . ." *Thomas v. McNeil*, No. 3:03-cv-00237 (M.D. Fla. Feb. 10, 2009) (concluding that *M.B.*, in other federal habeas cases, engaged in behavior that

19

"set[] her conduct above mere professional negligence, and [rose] to the level of bad faith.").

Even ignoring the facts discussed above, the majority realizes it must explain away M.B.'s deliberate failure to inform Franqui that the claim had been omitted because that action would provide clear evidence that M.B.'s mental state was sufficiently culpable under any standard.[3]  It is uncontested that Franqui signed a document given to him by his lawyer indicating that he had read the habeas petition.  In isolation, however, that fact does not defeat his claim that the integrity of the proceedings were corrupted in this case.[4]  Franqui continually expressed his desire to include the *Bruton* claim and relied on his counsel to do just

---

[3]  The majority makes an incredible distinction on this point.  It explains its decision to excuse M.B.'s post-omission concealment by pointing out that she did not "affirmatively represent[] that something was in the petition which was actually not in it."  Majority Op. at 10 n.5.  Instead, she heard Franqui say that the state must be having a difficult time countering the *Bruton* claim and she simply let the conversation proceed.  I part company with my colleagues in adopting this logic.  M.B. adopted the premise of Franqui's statement, i.e., the *Bruton* claim was there to counter.  The law recognizes that silence can be construed as a constructive admission where one would be expected to speak and does not.  *See* Fed. R. Evid. 801 n.(d)(2)(B) ("Under established principles an admission may be made by adopting or acquiescing in the statement of another.").  M.B.'s failure to correct indicated that Franqui's *Bruton* claim was included in his petition, and Franqui was justified in inferring the same.  The majority's conclusion—that such a sin by silence is somehow less reprehensible than an affirmative misrepresentation—is one that I cannot join.

[4]  In the abstract, I could conceive of a situation where the petitioner's decision to sign the habeas petition would be a sufficient ratification of counsel's omission so as to justify denial of relief.  But, in light of the facts presented, that cannot be the proper basis for deciding this appeal.

20

that while he served his sentence.[5] While Franqui erred by failing to read the entire document, M.B.'s intentional submission of a document containing a material misrepresentation further demonstrates her level of misconduct. She sent Franqui only the signature page, thereby ensuring that he could not read the petition. M.B.'s initial omission was exacerbated by her continued concealment of it and, in this case, sufficiently detracted from the integrity of the proceedings to take this case out of the realm of "ordinary" claim-omission cases. If such conduct is ordinary, it is because the standards for practitioners of law have been unacceptably lowered. Assuming the truth of his allegations, M.B.'s omission resulted from either (1) something more than negligence or (2) a level of gee-golly, aw-shucks lawyering that is completely unacceptable in capital cases. I would not allow Franqui to be deprived of the right to file his desired habeas petition because of our failure to expect competent representation in life-and-death cases.

If M.B.'s omission, after all of the alleged communication on the topic, does

---

[5] The majority emphasizes that, although incarcerated, there was no urgency in Franqui signing the habeas petition. Rather, he should have insisted on seeing the petition before signing it. While I agree that he should have read the entire document before completing the mandatory signature page, I view Franqui's neglect in light of his situation. Nothing indicates he possessed a familiarity with the particular deadlines in his case. Had he requested a copy of the complete petition, and had he missed an AEDPA deadline while waiting for M.B. to produce it—no outlandish scenario, given M.B.'s history and conduct—we would undoubtedly have affirmed a district court's dismissal of the petition. Franqui is not an ordinary civil litigant, *see* Majority Op. at 11 n.6, but rather an incarcerated habeas petitioner that went to exceptional lengths to ensure the inclusion of his *Bruton* claim.

not allow for a proper Rule 60(b) motion, then none can.  This conflicts with the Supreme Court's statement that a habeas counsel's omission "*ordinarily* does not go to the integrity of the proceedings . . . ." *Gonzalez*, 125 S. Ct. at 2648 n.5 (emphasis added).  I disagree with the majority that "[i]t is a serious problem for a court to have worked on a habeas petition and decided its merit, only to have a petitioner later come in and say, 'Wait, there's more,'[6]—that is, when the petitioner continues, "because my lawyer lied to me."  The majority eviscerates Rule 60(b) in this context, which the Supreme Court was unwilling to do in *Gonzalez*.[7]  The Court acknowledged a small, but existent, group of cases that would provide relief for extraordinary omissions by counsel.

IV.

The burden for a petitioner to demonstrate that his Rule 60(b) motion is not a second or successive habeas petition is high.  In my view, rightfully so.  But a high burden is not meant to eliminate the possibility that a habeas petitioner can

---

[6] Majority Op. at 11.
[7] Presumably, Justice Scalia, writing for the majority of the Supreme Court, meant what he wrote.  Therefore, while it is not ordinarily the case, there must be some situation in which habeas counsel's omissions would go to the integrity of the proceedings and allow a habeas petitioner to seek relief from judgment based on Rule 60(b).

22

obtain Rule 60(b) relief for an extraordinary omission by counsel. If Franqui's allegations surrounding M.B.'s omission do not rise to a level warranting relief, no claim-omission case will. Franqui, despite exerting tremendous effort to ensure inclusion of a claim, was never given the opportunity to present his most persuasive federal constitutional claim in federal court as a result of bad-faith actions by his own counsel. The majority's position provides him with no recourse. I cannot agree with such a result.